IN THE UNITED STATES DISTRICT COURT      FILED
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION                          2015 OCT 28   PM 1:58

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

TYLER ANDREWS and CLEMENTINA
ROSALES,
                    Plaintiffs,

-vs-                                          Case No. A-14-CA-136-SS

THE DIAL CORPORATION,
                    Defendant.

_____

## ORDER

BE IT REMEMBERED on the 15th day of October 2015, the Court held a hearing in the

above-styled cause, and the parties appeared by and through counsel.  Before the Court is Defendant

The Dial Corporation's Motion for Summary Judgment [#50], Plaintiffs Tyler Andrews and

Clementina Rosales's Response [#51] thereto, Defendant's Reply [#53] thereto, Plaintiffs' Letter

Brief [#63], Defendant's Letter Brief [#68], and Defendant's Opposed Motion for Leave to File

Motion to Dismiss [#72].[1]  Having reviewed the documents, the governing law, the arguments of the

parties at hearing, and the file as a whole, the Court now enters the following opinion and orders.

## Background

This is a breach of implied warranty of merchantability case[2] brought by Plaintiffs Tyler

Andrews and Clementina Rosales against Defendant The Dial Corporation (Dial).  Andrews is the

_____

[1] Defendant's Opposed Motion for Leave to File Motion to Dismiss [#72] is DENIED.  Defendant filed the opposed motion on October 20, 2015, eleven days before the month of trial.  The motion to dismiss is untimely.  *See* FED. R. CIV. P. 12(c).

[2] While Plaintiffs' fourth amended complaint asserts causes of action against Dial for negligence, gross negligence, "products liability" (which appears to be a strict liability claim alleging all three theories of products liability), breach of express warranty, and breach of implied warranty, during hearing on the instant motion for summary judgment on October 15, 2015, Plaintiffs abandoned all of their claims other than their breach of implied warranty claim. Accordingly, the Plaintiffs' negligence, gross negligence, "products liability," and breach of express warranty claims are DISMISSED.

owner of a duplex property located at 10611 Golden Meadow Drive, Austin, Texas, which was damaged in a fire on May 24, 2013. At the time of the fire, Rosales and her family were tenants occupying one half of the duplex. Andrews and Rosales allege the fire was caused by a defective Renuzit plug-in air freshener, a product manufactured by Dial, and seek real and personal property damages incurred as a result of the fire.

On the day the fire occurred, Rosales purchased two Renuzit plug-in air fresheners from a Dollar Store near her residence. After purchasing the air fresheners, Rosales returned home, removed one of the air fresheners from its packaging, and plugged the air freshener into a wall socket located next to a sofa in her living room.[3] *See* Resp. [#51-1] Ex. A (Rosales Dep.) at 20:11. No other devices were plugged into that particular wall socket. *See id.* at 22:1–4. Rosales testified the packaging of the air freshener appeared normal and undamaged. *See id.* at 12–14. The air freshener required no assembly, and there is no evidence Rosales altered the product in any way prior to plugging it in. *See id.* at 20:19–20 ("[A]ll I did was plug it in. I took it out of the box and I plugged it in."). Rosales testified she had previously plugged air fresheners into that socket without incident. *See id.* at 21:15–20.

After plugging in the air freshener, Rosales left the house to pick up her children from school. In Rosales's absence, the fire occurred in her unit of the duplex, causing damage to the unit itself and destroying much of Rosales's personal property. Rosales returned home with her children

---

[3] In her deposition, Rosales states she plugged the air freshener in next to a "big easy chair." *See* Resp. [#51-1] Ex. A (Rosales Dep.) at 20:11. There is no dispute, however, that the Renuzit air freshener was in fact plugged in next to a couch. It is not clear whether the "big easy chair" to which Rosales refers in her deposition and the "sofa" or "couch" to which the fire investigators refer are the same piece of furniture.

approximately one hour after leaving and found the Austin Fire Department (AFD) at the scene.

Plaintiffs allege the fire caused $150,000 of damage to their real and personal property.

Lieutenant Scott Hembree, an AFD fire investigator, arrived at the duplex while the

firefighters were still on-scene. Hembree, who has twenty-one years of experience with the AFD,

first as a firefighter and then as a fire investigator, testified his primary objective that day was to

determine the cause of the fire. Resp. [#51-2] Ex. B (Hembree Dep.) at 7:2–5; *see id.* at 32:12–16.

After arriving, Hembree spoke with the first responders, did a walkthrough of the scene while the

first responders ensured no fire remained burning, examined and took photographs of the exterior

of the building, then began his interior investigation of Rosales's unit. *Id.* at 36:7–8; 39:1–19;

40:16–18; 42:7–9. Hembree testified the living room suffered the greatest damage, although the

entirety of the house suffered some damage. *See id.* at 43:2–14.

Because the living room suffered the greatest damage, Hembree determined the fire

originated in the living room. *See id.* at 43:11–19. Based on "directional patterns on the couch

cushions" caused by heat damage, Hembree next determined the fire's "area of origin" was "the west

end of the couch." Mot. Summ. J. [#50-2] Ex. B (Hembree Report) at 17. Hembree pulled the

couch away from the wall, noted the back of the couch had suffered less damage than other portions

of the couch, and concluded based on his examination that "the fire did not originate behind or under

the couch." *Id.* Hembree's report notes the "west arm/end of the couch . . . was heavily charred,"

and that the wall outlet "behind the west arm of the couch suffered heavy heat damage, with the

plastic components of the outlet destroyed." *Id.* According to Hembree, the prongs of the Renuzit

air freshener were still seated securely in the outlet, and its heating element was still attached to the

prongs. *See id.*; Hembree Dep. at 46:4–17. In his testimony and his report, Hembree stated he pulled

the outlet itself from the wall, examined its interior components, and concluded "the fire did not appear to have originated inside the outlet." Hembree Dep. at 46:23–15; Hembree Report at 17. Hembree also examined a charred box of debris in front of the outlet, which he later identified as a box of Christmas ornaments, and concluded there were no ignition sources within the debris. Hembree Report at 17. Hembree found no other potential ignition sources in the area of origin of the fire. *Id.* Based on all of the above, Hembree concluded "[t]he ignition source was the plug-in air deodorizer on the south wall." Hembree Report at 19.

Andrews filed a claim with Liberty Texas Lloyds Insurance Company, his insurer, which paid for repairs to the property. On May 27, 2013, Liberty sent its own fire investigator, Don Nichols, who has over thirty-five years of experience as a firefighter and fire investigator, to determine the origin and cause of the fire. Resp. [#51-3] Ex. C (Nichols Aff.) at 2–3. After surveying the scene, Nichols "determined that the electrical outlet [by the sofa] . . . was . . . the area of origin of the fire," but noted upon examination that the outlet itself "showed no signs of having caused the fire." *Id.* at 4. Nichols concluded "the only viable ignition source . . . [wa]s that of the Renuzit Air Freshener" which he stated had "failed and set fire to the residence." *Id.* at 4.

On August 28, 2013, Andrews initiated this action[4] by filing suit against Henkel Corporation in the 250th Judicial District Court of Travis County, Texas. *See* Notice Removal [#1-6] Ex. D (Orig. Pet.). According to Henkel Corporation's Notice of Removal, the suit "was not removable

---

[4] According to the state court pleadings, Liberty Texas Lloyds Insurance Company filed this suit in Tyler Andrews's name as subrogee of Andrews. *See* Notice Removal [#1-6] Ex. C (Second Am. Pet.) ¶ 24 ("Liberty is qualified to bring this case in its name or in the name of the insured, Tyler Andrews for the sum paid to him as a result of those acts[] or omissions of the Defendant, and as described herein, is subrogated to any right of recovery or cause of action that Plaintiff has for said damage. Liberty is entitled to bring this action in the Plaintiff's name pursuant to common law and equity, the terms of the insurance policy, and[/]or the specific assignments, if any, that Plaintiff may have executed after his losses.").

when originally filed, [but] became removable on January 13, 2014," as Andrews provided actual damage calculations on that date. *Id.* [#1] at 1–2. Henkel Corporation removed the case to this Court on February 12, 2014, invoking the Court's diversity jurisdiction. *See id.* at 2.

On April 16, 2014, the Court entered a scheduling order in this case, setting docket call for October 30, 2015, and trial in November 2015. *See* Sched. Ord. [#7] at 3. On August 25, 2014, Andrews amended his complaint to add Rosales and Dial as parties with the Court's leave. *See* Third[5] Am. Compl. [#16]; Aug. 18, 2014 Order [#15]. The Court dismissed Henkel Corporation from the suit on May 28, 2015, pursuant to the parties' stipulation. *See* Order of Dismissal [#41]. On the parties' motions to modify the scheduling order, *see* Joint Mot. Extend [#19], and for extension of time to complete discovery, *see* Joint Mot. Extend [#42], discovery was ultimately set to close on September 30, 2015, one month before docket call. *See* June 10, 2015 Order [#45].

Dial filed the instant motion for summary judgment on September 15, 2015, and Plaintiffs responded on September 30, 2015. Two days later, on October 2, 2015, Dial filed a motion to exclude the testimony of Plaintiffs' experts, Hembree and Nichols. *See* Mot. Exclude [#52]. The Court held a hearing on the motions for summary judgment and to exclude on October 15, 2015; during hearing, the Court orally granted Dial's motion to exclude the expert testimony of Hembree and Nichols, but ruled Hembree and Nichols would be permitted to give testimony as fact witnesses. *See* Oct. 15, 2015 Order [#61].

Finally, following hearing, Plaintiffs moved to file their fourth amended complaint, the currently operative pleading, in order to update the case style. *See* Fourth Am. Compl. [#62].

---

[5] The first iterations of the complaint were filed in the state court; Plaintiffs named their first amended pleading in this Court the "Third Amended Complaint." *See* Third Am. Compl. [#16].

The motion for summary judgment is now ripe for decision.

## Analysis

### I.      Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

Dial argues it is entitled to summary judgment on Plaintiffs' breach of implied warranty claim because (1) Plaintiffs have presented no evidence that the Renuzit air freshener was unfit for its ordinary purpose, as Plaintiffs have no evidence of defect; (2) Plaintiffs have presented no evidence they notified Dial of the breach of warranty; and (3) Plaintiffs have produced no evidence of causation.[6] Plaintiffs respond that Rosales's testimony she used the air freshener properly, coupled with Hembree's investigation and Nichols' affidavit, are sufficient to create a genuine issue

---

[6] Dial also appears to argue Plaintiffs' breach of warranty claims "are subsumed by their strict liability claims." *See* Mot. Summ. J. [#50] at 10. Dial is incorrect. Under Texas law, a products liability plaintiff may simultaneously pursue a strict liability and breach-of-warranty claim. *See, e.g., Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 & n.3 (Tex. 1999) ("Liability for personal injuries caused by a product's defective design can be imposed under several theories, among them negligence, breach of warranty, and strict products liability." (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 423 (Tex. 1984); POWERS, TEX. PRODS. LIAB. LAW § 1.02, at 1-1 to 1-2 (2d ed. 1994))).

of fact as to defect and causation. Plaintiffs do not respond to Dial's argument regarding notification of the breach.

As set forth below, the Court finds Dial is entitled to summary judgment because Plaintiffs have adduced no expert testimony on the issue of causation. As such, the Court declines to consider Dial's remaining arguments.

A plaintiff claiming breach of the implied warranty of merchantability under Texas law must prove: (1) that the merchant sold goods to the plaintiff; (2) that the goods were unmerchantable; (3) that the plaintiff notified the defendant of the breach; and (4) that the plaintiff suffered injury proximately caused by the breach. *Coppock v. Nat'l Seating & Mobility, Inc.*, —F. Supp. 3d—, 2015 WL 4637545, at *6 (W.D. Tex. 2015) (citing TEX. BUS. & COM. CODE § 2.314 cmt. 13; *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 816 (S.D. Tex. 2013)); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999) ("[L]iability for breach of warranty requires a showing of proximate cause[.]").

To be merchantable under Texas law, goods must be "fit for the ordinary purposes for which such goods are used[.]" TEX. BUS. & COM. CODE § 2.314(b)(3).[7] "[P]roof of a defect is required in an action for breach of implied warranty of merchantability under section 2.314(b)(3)." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). The defect in an implied warranty of merchantability case is not the same as the defect in a strict products liability case; in an implied warranty of merchantability case, "defect" means a condition of the goods that renders them unfit

---

[7] Section 2.314 lists a number of other requirements for merchantability not applicable here. *See* TEX. BUS. & COM. CODE § 2.314(b).

for the ordinary purposes for which they are used because of a lack of something necessary for adequacy. *Id.*

"A plaintiff does not . . . have to use direct or expert opinion evidence to show that the goods had a defect; he can instead meet his burden by using circumstantial evidence." *Plas-Tex*, 772 S.W.2d at 444 (citing *Ford Motor Co. v. Tidwell*, 563 S.W.2d 831, 835 (Tex. App.—El Paso 1978, writ ref'd n.r.e.)). In other words, "a plaintiff is not required to show by direct proof how the product became defective or to identify a specific engineering or structural defect." *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 858 (Tex. App.—Dallas 2007, pet. denied) (citing *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 155 (Tex. App.—Texarkana 1997, writ denied); *V. Mueller & Co. v. Corley*, 570 S.W.2d 140, 143 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.)). Where the plaintiff relies solely on circumstantial evidence to establish defect, the plaintiff must show proper use of the goods. *Plas-Tex*, 772 S.W.2d at 444 & n.5. "Evidence of proper use of the goods together with a malfunction may be sufficient evidence of a defect." *Id.* at 444–45. However, "[t]he inference of defect may not be drawn . . . from the mere fact of a product-related accident." *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 602 (Tex. 2004) (quoting RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 cmt. d).

A plaintiff who brings a products liability suit under an implied warranty of merchantability theory is required to prove proximate causation, which includes cause-in-fact and foreseeability. *See Coppock*, 2015 WL 4637545 at *6. Depending upon the facts of the case, expert testimony may be required to establish proximate cause. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 204 (Tex. App.—Texarkana 2008, no pet.). "Whether expert testimony is required depends on whether the

issue involves matters beyond 'the general experience and common understanding of laypersons.'" *Id.* (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572 583 (Tex. 2006)).

Here, as previously noted, Dial argues it is entitled to summary judgment because Plaintiffs have no evidence of defect or causation. The Court finds that even if Plaintiffs were able to prove defect through circumstantial evidence, as they argue they can, Dial would remain entitled to summary judgment because Plaintiffs have no expert testimony establishing causation. While Plaintiffs argued the expert testimony of Hembree and Nichols was sufficient to establish causation, as previously stated, the Court during hearing orally granted Dial's motion to exclude that testimony, ruling Hembree and Nichols would not be permitted to opine on causation (or on the existence of a defect). *See* Oct. 15, 2015 Order [#61] at 2.

In *Driskill v. Ford Motor Co.*, a Texas court of appeals affirmed a trial court's decision to grant summary judgment in defendants' favor under similar circumstances and on similar facts. *In Driskill*, the plaintiffs filed a products liability action after their car caught fire while turned off and parked in the garage of their house, causing serious damage. 269 S.W.3d at 202. The plaintiffs alleged the fire was caused by a defect in the speed control deactivation switch, which "melted beyond recognition" during the fire, and sought to prove their case through circumstantial evidence. *See id.* at 202, 205. The trial court excluded the testimony of a fire investigator proffered by the plaintiffs "as to the causation of the fire," but permitted the investigator to testify concerning the "place of origin" of the fire. *Id.* at 205. The fire investigator testified the fire originated in the left rear portion of the engine compartment, where the speed control deactivation switch was located. *Id.*

Examining whether the plaintiffs had adduced sufficient evidence of proximate cause, the

*Driskill* court held:

> There is no expert testimony bridging the analytical gap between the origin of a fire
> in the left rear area of an engine compartment and the conclusion that the [speed
> control deactivation switch] in that area was the cause-in-fact of the fire. While the
> evidence creates a strong suspicion that the defect caused the fire, the suspicion is
> just that, a suspicion. . . . Whether the [speed control deactivation switch] caused the
> fire involves complex questions of chemistry, electrical engineering, and hydraulic
> engineering. The issue is beyond the general experience and common understanding
> of a layperson. Expert testimony was required to establish the [speed control
> deactivation switch] was the cause-in-fact of the fire.

*Id.*; *see also Cruz v. Furniture Technicians of Houston, Inc.*, 949 S.W.2d 34, 36 (Tex. App.—San

Antonio 1997, writ denied) (upholding judgment notwithstanding the verdict because plaintiffs

presented no expert testimony on the question whether the use of a flammable substance near an

uncovered electrical outlet proximately caused the fire in question); *C & M Cooled Engine v. Cub

Cadet LLC*, 348 F. App'x 968, 970 (5th Cir. 2009) (affirming summary judgment in favor of

defendant lawnmower manufacturer where plaintiff "provided no evidence of the mower's capability

of causing the fire").

Here, as in *Driskill*, whether some defect caused the Renuzit air freshener to fail and ignite

involves scientific questions, including questions of chemistry, physics, and electrical engineering,

outside the common understanding of a layperson. While Plaintiff offered the purportedly expert

testimony of Hembree and Nichols on the causation question, as the Court ruled during hearing, their

opinions that a malfunction in the Renuzit air freshener caused the fire are speculative. While both

Hembree and Nichols are clearly qualified to opine concerning the area and point of origin of a fire,

that does not mean they are qualified to opine concerning whether *a defect in a particular product

caused a fire*. In fact, both Hembree and Nichols testified they are not qualified to render an opinion

that the air freshener malfunctioned and that any such malfunction caused the fire, as neither are engineers with a working understanding of the air freshener. *See* Hembree Dep. at 18:9–23; Nichols Dep. at 25:25–26:21. Hembree's report reflects the speculative nature of any causation opinion he attempted to render: Hembree theorized that ignition could have resulted from the Renuzit air freshener being too close to the couch or too close to the box of Christmas ornaments in front of the outlet, rather than from failure of the device itself. *See* Hembree Rep. at 19.

In sum, Plaintiffs have no expert testimony bridging the analytical gap between the origin of the fire at the electrical outlet by the sofa in Rosales's living room and the conclusion a defect in the Renuzit air freshener was the cause-in-fact of the fire. The record is silent concerning whether the Renuzit air freshener is even capable of causing a fire, or under what circumstances it might or might not ignite. Resolution of these questions by Hembree, Nichols, or other laypersons would be purely speculative. Although Plaintiffs' evidence may create "a strong suspicion" that a defect in the air freshener caused the fire, suspicion is insufficient to demonstrate causation. *Driskill*, 269 S.W.3d at 205. As Plaintiffs were required to present competent expert testimony on the causation question and failed to do so, Dial is entitled to summary judgment.

### Conclusion

Accordingly:

IT IS ORDERED that Defendant The Dial Corporation's Motion for Summary Judgment [#50] is GRANTED; and

IT IS FINALLY ORDERED that Defendant The Dial Corporation's Opposed Motion for Leave to File Motion to Dismiss [#72] is DENIED. As such, the Clerk of Court is DIRECTED to terminate Doc. #73.

SIGNED this the _28th_ day of October 2015.


SAM SPARKS
UNITED STATES DISTRICT JUDGE